UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| EUGENE SNYDER, JR., | ) | Case No. 5:12CV255 |
| | ) | |
| Petitioner, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| v. | ) | Magistrate Judge George J. Limbert |
| | ) | |
| WARDEN BUCHANAN, ROSS | ) | **Report and Recommendation** |
| CORRECTIONAL INSTITUTION | ) | **of Magistrate Judge** |
| | ) | |
| Respondent. | ) | |
| | ) | |

On January 23, 2012[1], Petitioner Eugene Snyder, Jr. ("Petitioner"), acting *pro se*, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. ECF Dkt. #1. Petitioner seeks relief for alleged constitutional violations that occurred during his trial in the Tuscarawas County, Ohio Court of Common Pleas, where he was convicted of one count of aggravated murder in violation of Ohio Revised Code ("ORC") §2903.01(A), with a firearm specification pursuant to ORC §2941.145, one count of felonious assault in violation of ORC §2903.11(A)(2), with a firearm specification pursuant to ORC §2941.145, and five counts of tampering with evidence in violation of ORC 2921.12. ECF Dkt. #11-1 at 5. On June 5, 2012, Respondent Warden Buchanan ("Respondent"), Warden of Ross Correctional Institution, where Petitioner is incarcerated, filed an answer/return of writ. ECF Dkt. #11. No traverse was filed, however a lengthy memorandum of law in support was attached to the petition. For the following reasons, the undersigned RECOMMENDS that the Court DISMISS the petition in its entirety with prejudice:

---

[1]The filing date for a petition from an incarcerated *pro se* petitioner is the date the petition was handed over to the prison mail system, not the date it was received and docketed by the federal habeas court. *Houston v. Lack*, 487 U.S. 266, 270-72, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988).

## I.    SYNOPSIS OF THE FACTS

The Fifth District Court of Appeals of Ohio set forth the relevant facts on direct appeal.  ECF Dkt. #11-1 at 13-38.  These binding factual findings "shall be presumed to be correct," and Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. §2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 119 S.Ct. 2403 (1999):

{¶ 2} Shortly after 10:00 a.m. on October 29, 2009, appellant called 911 and reported that he found his wife, Debby Snyder, dead in the driveway of their Mineral City residence.  Sheriff's deputies arrived on the scene to find Debby's dead body lying in a pool of blood at the bottom of the front porch steps of the residence, near the driver's side of a Chevy Trailblazer.  The front of Debby's neck had three incisions, measuring up to nine inches in length and up to four inches in depth. Roughly one-half of her neck was transected, including her larynx and part of her esophagus. The crime scene revealed a trail of blood leading from the bottom of the driveway to the area where the body was found. Blood was also found on the interior of the Trailblazer, the exterior of the driver's side door, and the rear wheel on the driver's side.

{¶ 3} At the scene, appellant explained to police that Debby had not been home for days and when he left the house at 5:00 a.m. for work that morning, he noticed her Trailblazer in the driveway. After checking the passenger side window with a flashlight and not seeing her purse in the vehicle, he assumed she left with someone else and he went to work. Appellant was self-employed with a trash route. He claimed that when he arrived home around 10:00 a.m. after finishing his route and stopping at the landfill, he noticed Debby's body lying in the driveway. When questioned about the fact that he claimed to have just returned from work, but he was wearing slippers, he explained that he stopped to change out of his boots upon entering the home to call 911.

{¶ 4} Sheriff Walt Wilson drove appellant to the home of Gary Snyder, appellant's son, to wait while the crime scene was processed. While in route appellant confessed that he had removed his wife's wedding ring from her finger and hid it in the basement bathroom above the shower. He later explained that he took the ring off her finger because "it was sticking up there like a rose in a shit pile." Tr. 545. Officers recovered the ring above the basement shower.

{¶ 5} Late in the afternoon of October 29, deputies searched the area of the Kimble landfill where appellant had dumped a load of trash earlier that day. Officers located a shirt with an image of a trash truck and the words "Snyder Enterprises." The shirt was covered in dark stains which were determined to be bloodstains.

{¶ 6} Appellant agreed to come to the Sheriff's office for an interview on October 30, 2009.  He was interviewed by Detective Orvis Campbell. Appellant initially repeated his story that he found the body when he returned home from work. He also explained that in the afternoon of October 28, Debby's daughter called him, looking for her mother. He told his stepdaughter that Debby was "probably out with her damn boyfriend somewhere" and hung

up the phone.  He also explained that he spoke with Debby around 8:00 p.m. on October 28, and she told him she would be home around 10:00 p.m. to sign checks for their business, which was in Debby's name.

{¶ 7} When appellant was confronted with the bloody shirt found in the landfill, appellant changed his story and explained that he found his wife dead before he left for work.  When further confronted, appellant began to admit that he was responsible for her death.

{¶ 8} Appellant said that his wife came home around 10:00 p .m. and they began arguing about money.  Debby told him she had had an affair, but it was a mistake.  Appellant and Debby began physically fighting and hitting each other.  He admitted that she got into the Trailblazer, and while she was sitting there he went to the garage and retrieved a utility knife, which he used to cut her neck.

{¶ 9} After a break in the interview, appellant revealed that he shot Debby as well.  He explained that he had a .32 caliber pistol in his pocket when she returned home. He stated that Debby came after him with a shovel and he unloaded the pistol at her, but she kept coming after him. He said she told him, "You old fucker, I'm gonna kill you." When she continued to pursue him despite the shooting, he went into the garage and got the utility knife. She was sitting in her SUV and weakening.  He said at that point she was "still running her fuckin' mouth" so he cut her twice.  Following the interview, appellant led detectives to retrieve his bloody clothes which he had discarded along his trash route, and to the place at Atwood Dam where he had thrown the gun and knife into the water.

{¶ 10} Officers noted that the shovel on appellant's property was covered with leaves and standing upright against a dirt pile, and did not appear to have been recently moved or used in an assault. Although appellant claimed he suffered a painful injury to his ribs from the blow from the shovel, he complained to a medic on the scene about chest pain but never mentioned this rib injury. He never complained to jail staff about this injury and had no apparent marks.

{¶ 11} The autopsy demonstrated that in addition to the incised wounds to her neck, Debby had 12–15 contusions under her scalp, suggesting blunt force trauma to her head. She had severe bruising on both knees and elbows.  The autopsy also revealed four gunshot wounds, two to her torso and two to her head.  Debby had cocaine present in her bloodstream. The coroner found that although they were not "drop and die" injuries, the gunshot wounds would have eventually killed Debby.  However, the incised wounds to the neck by themselves would have caused her death.

*State v. Snyder*, 2011 WL 2586789 at *1-3.

## II.     PROCEDURAL HISTORY

### A.     State Trial Court

On November 5, 2009, the Tuscarawas County, Ohio Grand Jury indicted Petitioner for:

one count of aggravated murder in violation of ORC §2903.01(A), and a firearm specifications pursuant to ORC §2945.145 (Count One);

one count of murder in violation of ORC §2903.02(A), with a firearm specifications pursuant to ORC §2945.145 (Count Two);

one count of felonious assault in violation of ORC §2903.11(A)(2), with a firearm specification pursuant to ORC §2945.145 (Count Three); and

five counts of tampering with evidence in violation of ORC §2921.12 (Counts Four through Eight).

*Id.* at 40-45.

Prior to trial, the state filed proposed jury instructions as to "prior calculation and design" with a memorandum for the lesser included offense of murder, and a motion in limine as to evidence of the victim's character. Petitioner filed a motion in limine, a motion for specific jury instructions, and proposed jury instructions as to the lesser included offense of voluntary manslaughter. *Id.* at 46-92. The case proceeded to trial on May 5, 2010, where Petitioner was found guilty of one count of aggravated murder in violation of ORC §2903.01, with a firearm specification pursuant to ORC §2941.145, and one count of felonious assault in violation of ORC §2903.11(A)(2), with a firearm specification pursuant to ORC §2941.145. Petitioner entered a plea of guilty, pursuant to *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), to five counts of tampering with evidence in violation of ORC 2921.12. *Id.* at 93-98.

At the sentencing hearing on May 24, 2010, the trial court found that Counts One and Three were allied offenses of similar import, and the prosecutor elected to dismiss Count Three. *Id.* at 6. The trial court also dismissed Count Two as a lesser included offense of Count One. The trial court imposed a life imprisonment without parole on Count One, plus a consecutive three-year sentence on the firearm specification, and concurrent five-year sentences on each of the tampering with evidence convictions. *Id.*

**B.    Direct Appeal**

On June 8, 2010, Petitioner, through counsel, filed a notice of appeal to the Ohio Court of Appeals for the Fifth District. *Id.* at 99. Petitioner raised the following assignments of error in his appellate brief:

-4-

ASSIGNMENT OF ERROR NO. 1

THE TRIAL COURT VIOLATED THE APPELLANT'S DUE PROCESS RIGHTS WHEN IT IMPROPERLY INSTRUCTED THE JURY WITH REGARDS TO AGGRAVATED MURDER.

ASSIGNMENT OF ERROR NO. 2

THE TRIAL COURT VIOLATED THE APPELLANT'S DUE PROCESS RIGHTS WHEN IT FAILED TO PROVIDE JURY INSTRUCTIONS OF MANSLAUGHTER, INVOLUNTARY MANSLAUGHTER AND SELF-DEFENSE TO THE JURY.

ASSIGNMENT OF ERROR NO. 3

THE TRIAL COURT ABUSED ITS DISCRETION AND DENIED THE APPELLANT HIS DUE PROCESS RIGHTS TO A FAIR TRIAL BY FAILING TO GRANT HIS MOTION FOR MISTRIAL.

ASSIGNMENT OF ERROR NO. 4

THE TRIAL COURT ABUSED ITS DISCRETION AND DENIED THE APPELLANT HIS DUE PROCESS RIGHTS TO A FAIR TRIAL BY ALLOWING TESTIMONY IN VIOLATION OF EVIDENCE RULE 401 AND 403.

ASSIGNMENT OF ERROR NO. 5

THE TRIAL COURT ABUSED ITS DISCRETION AND DENIED THE APPELLANT HIS DUE PROCESS RIGHTS TO A FAIR TRIAL BY NOT ALLOWING EVIDENCE OF THE VICTIM'S CHARACTER AS IT RELATES TO A CLAIM FOR SELF-DEFENSE OFFERED BY THE APPELLANT.

ASSIGNMENT OF ERROR NO. 6

THE EVIDENCE IS INSUFFICIENT TO SUSTAIN THE CONVICTION AND THE VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

*Id.* at 112. On June 30, 2011, the Fifth District Court of Appeals affirmed Petitioner's conviction and sentence. *Id.* at 13-38.

### C.     Supreme Court of Ohio

On July 27, 2011, Petitioner, acting *pro se*, filed a notice of appeal to the Supreme Court of Ohio. *Id.* at 250-251. In his memorandum in support of jurisdiction, Petitioner raised the following propositions of law:

1. THE TRIAL COURT VIOLATED THE APPELLANT'S DUE PROCESS RIGHTS WHEN IT IMPROPERLY INSTRUCTED THE JURY WITH REGARDS TO AGGRAVATED MURDER.

-5-

2. THE TRIAL COURT VIOLATED THE APPELLANT'S DUE PROCESS RIGHTS WHEN IT FAILED TO PROVIDE JURY INSTRUCTIONS OF MANSLAUGHTER, INVOLUNTARY MANSLAUGHTER AND SELF-DEFENSE TO THE JURY.

3. THE TRIAL COURT ABUSED ITS DISCRETION AND DENIED THE APPELLANT HIS DUE PROCESS RIGHTS TO A FAIR TRIAL BY FAILING TO GRANT HIS MOTION FOR MISTRIAL.

4. THE TRIAL COURT ABUSED ITS DISCRETION AND DENIED THE APPELLANT HIS DUE PROCESS RIGHTS TO A FAIR TRIAL BY ALLOWING TESTIMONY IN VIOLATION OF EVIDENCE RULE 401 AND 403.

5. THE TRIAL COURT ABUSED ITS DISCRETION AND DENIED THE APPELLANT HIS DUE PROCESS RIGHTS TO A FAIR TRIAL BY NOT ALLOWING EVIDENCE OF THE VICTIM'S CHARACTER REGARDING SPECIFIC INSTANCES OF CONDUCT RELATED TO THE VICTIM'S CHARACTER AS IT RELATES TO A CLAIM FOR SELF-DEFENSE OFFERED BY THE APPELLANT.

6. THE EVIDENCE IS INSUFFICIENT TO SUSTAIN THE CONVICTION AND THE VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

*Id.* at 280. On November 2, 2011, the Supreme Court of Ohio dismissed the appeal as not involving any substantial constitutional question. *Id.* at 341.

## III. 28 U.S.C. § 2254 PETITION

On January 23, 2012, Petitioner, acting *pro se*, filed the instant petition for a writ of habeas corpus. ECF Dkt. #1. Petitioner raises the following grounds for relief:

GROUND ONE: THE TRIAL COURT VIOLATED THE APPELLANT'S DUE PROCESS RIGHTS WHEN IT IMPROPERLY INSTRUCTED THE JURY WITH REGARDS TO AGGRAVATED MURDER.

GROUND TWO: THE TRIAL COURT VIOLATED THE APPELLANT'S DUE PROCESS RIGHTS WHEN IT FAILED TO PROVIDE JURY INSTRUCTIONS OF MANSLAUGHTER, INVOLUNTARY MANSLAUGHTER AND SELF-DEFENSE TO THE JURY.
GROUND THREE: THE TRIAL COURT ABUSED ITS DISCRETION AND DENIED THE APPELLANT HIS DUE PROCESS RIGHTS TO A FAIR TRIAL BY FAILING TO GRANT HIS MOTION FOR MISTRIAL.

GROUND FOUR: THE TRIAL COURT ABUSED ITS DISCRETION AND DENIED THE APPELLANT HIS DUE PROCESS RIGHTS TO A FAIR TRIAL BY ALLOWING TESTIMONY IN VIOLATION OF EVIDENCE RULE 401 AND 403.

GROUND FIVE: THE TRIAL COURT ABUSED ITS DISCRETION AND DENIED THE APPELLANT HIS DUE PROCESS RIGHTS TO A FAIR TRIAL BY NOT ALLOWING EVIDENCE TO THE VICTIM'S CHARACTER REGARDING SPECIFIC INSTANCES OF CONDUCT RELATED TO THE

VICTIM'S CHARACTER AS IT RELATES TO A CLAIM FOR SELF-DEFENSE
OFFERED BY THE APPELLANT.

GROUND SIX: THE EVIDENCE IS INSUFFICIENT TO SUSTAIN THE
CONVICTION AND THE VERDICT IS AGAINST THE MANIFEST WEIGHT
OF EVIDENCE.

ECF Dkt. #1.

## IV.    PROCEDURAL BARRIERS TO REVIEW

A petitioner must overcome several procedural barriers before a court will review the merits of a petition for a federal writ of habeas corpus.  As Justice O'Connor noted in *Daniels v. United States*, "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim."  532 U.S. 374, 381 (2001); *see also United States v. Olano*, 507 U.S. 725, 731 (1993). However, the Supreme Court has also held that it would be in the interests of the parties and the courts for the merits of a petition to be addressed forthwith if it is clear that the applicant does not even raise a colorable federal claim. *Granberry v. Greer*, 481 U.S. 129, 135 (1987); *Prather v. Rees*, 822 F.2d 1418, 1421-22 (6th Cir. 1987) (lack of exhaustion was properly excused where petition was plainly meritless, the state had not addressed exhaustion, and disposition of the case would not offend federal-state comity).

### A.    Statute of Limitations

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") statute of limitations period for filing a petition for a writ of federal habeas corpus is one year, and it begins to run on the date judgement became final.  28 U.S.C. §2244(d)(1).  The AEDPA statute of limitations is not at issue in this case.

### B.    Exhaustion of State Remedies

As a general rule, a state prisoner must exhaust all possible state remedies or have no remaining state remedies before a federal court will review a petition for a writ of habeas corpus. 28 U.S.C. § 2254(b) and (c); *see also Baldwin v. Reese*, 541 U.S. 27, 29 (2004).  The exhaustion requirement is satisfied "once the federal claim has been fairly presented to the state courts." *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987).  To exhaust a claim, a petitioner must present

it "to the state courts under the same theory in which it is later presented in federal court." *Wong v. Money*, 142 F.3d 313, 322 (6ᵗʰ Cir. 1998); *see also McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  General allegations of the denial of rights to a "fair trial" and "due process" do not "fairly present" claims that specific constitutional rights were violated. *McMeans*, 228 F.3d at 681 citing *Petrucelli v. Coombe*, 735 F.2d 684, 688-89 (2d Cir. 1984).

In order to have fairly presented the substance of each of his federal constitutional claims to the state courts, the petitioner must have given the highest court in the state in which he was convicted a full and fair opportunity to rule on his claims.  *Manning v. Alexander*, 912 F.2d 878, 881 (6ᵗʰ Cir. 1990).  A petitioner fairly presents the substance of his federal constitutional claim to the state courts by: (1) relying upon federal cases that use a constitutional analysis; (2) relying upon state cases using a federal constitutional analysis; (3) phrasing his claim in terms of constitutional law or in terms sufficiently particular to allege the denial of a specific constitutional right; or (4) alleging facts that are obviously within the mainstream of constitutional law. *Clinkscale v. Carter*, 375 F.3d 430, 437 (6ᵗʰ Cir. 2004), quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003); *see also Levine v. Torvik*, 986 F.2d 1506, 1516 (6ᵗʰ Cir. 1993) cert. denied, 509 U.S. 907 (1993)(quotation omitted).  In *Harris v. Lafler*, the Sixth Circuit laid out the options that a district court may pursue in dealing with a petition that contains unexhausted claims:

> When faced with this predicament in the past, we have vacated the order granting the writ and remanded the case to the district court so that it could do one of four things: (1) dismiss the mixed petition in its entirety, *Rhines*, 544 U.S. at 274, 125 S.Ct. 1528; (2) stay the petition and hold it in abeyance while the petitioner returns to state court to raise his unexhausted claims, *id*. at 275, 125 S.Ct. 1528; (3) permit the petitioner to dismiss the unexhausted claims and proceed with the exhausted claims, *id.* at 278, 125 S.Ct. 1528; or (4) ignore the exhaustion requirement altogether and deny the petition on the merits if none of the petitioner's claims has any merit, 28 U.S.C. § 2254(b)(2).

553 F.3d 1028, 1031-32  (6ᵗʰ Cir. 2009).  The Supreme Court has held that "the petitioner has the burden . . . of showing that other available remedies have been exhausted or that circumstances of peculiar urgency exist." *Darr v. Burford*, 339 U.S. 200, 218-19 (1950), *overruled in part on other grounds*, *Fay v. Noia*, 372 U.S. 391 (1963).  A petitioner will not be allowed to present claims never before presented in the state courts unless he can show cause to excuse his failure to present the claims in the state courts and actual prejudice to his defense at trial or on appeal, or that he is

actually innocent of the crime for which he was convicted.  *Coleman v. Thompson*, 501 U.S. 722, 748 (1991).

### C.    <u>Procedural Default</u>

The procedural default doctrine serves to bar review of federal claims that a state court has declined to address when a petitioner does not comply with a state procedural requirement. *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).  In these cases, "the state judgment rests on independent and adequate state procedural grounds." *Coleman,* 501 U.S. at 730.  For purposes of procedural default, the state ruling with which the federal court is concerned is the "last explained state court judgment." *Munson v. Kapture*, 384 F.3d 310, 314 (6th Cir. 2004) citing *Ylst v.Nunnemaker*, 501 U.S. 797, 805 (1991) (emphasis removed).  When the last explained state court decision rests upon procedural default as an "alternative ground," a federal district court is not required to reach the merits of a habeas petition. *McBee v. Abramajtys*, 929 F.2d 264, 265 (6th Cir. 1991).  In determining whether a state court has addressed the merits of a petitioner's claim, federal courts must rely upon the presumption that there is no independent and adequate state grounds for a state court decision absent a clear statement to the contrary. *Coleman*, 501 U.S. at 735.

Applying this presumption, the Sixth Circuit Court of Appeals established a four-pronged analysis to determine whether a claim has been procedurally defaulted. *Maupin v. Smith*, 785 F.2d 135 (6th Cir. 1986).  Under the *Maupin* test, a reviewing court must decide:

(1)    whether the petitioner failed to comply with an applicable state procedural rule;

(2)    whether the state courts actually enforced the state procedural sanction;

(3)    whether the state procedural bar is an "adequate and independent" state ground on which the state can foreclose federal review; and

(4)    if the above are met, whether the petitioner has demonstrated "cause" and "prejudice."

*Id.* at 138.

Under the first prong of *Maupin*, there must be a firmly established state procedural rule applicable to the petitioner's claim and the petitioner must not have complied with the rule. *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991) (state procedural bar that is not "firmly established and

regularly followed" cannot serve to bar federal judicial review); *Franklin v. Anderson*, 434 F.3d 412, 418 (6th Cir. 2006). The question of whether a state procedural rule was "firmly established and regularly followed" is determined as of the time at which it was to be applied. *Richey v. Mitchell*, 395 F.3d 660, 680 (6th Cir. 2005).

Under the second prong, the last state court to which the petitioner sought review must have invoked the procedural rule as a basis for its decision to reject review of the prisoner's federal claims. *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991) (appeal dismissed for lack of jurisdiction); *Richey*, 395 F.3d at 678 ("a lapsed claim survives if the state court overlooked the default and decided the claim anyway"); *Baze v. Parker*, 371 F.3d 310, 320 (6th Cir. 2004) (if a state court does not expressly rely on a procedural deficiency, then a federal court may conduct habeas review); *Gall v. Parker*, 231 F.3d 265, 310 (6th Cir. 2000) (even if issue is not raised below, where state supreme court clearly addresses the claim, no procedural bar arises); *Boyle v. Million*, 201 F.3d 711, 716-17 (6th Cir. 2000) (where a state appellate court characterizes its earlier decision as substantive, the earlier decision did not rely on a procedural bar; therefore, the cause and prejudice test does not apply).

Under the third prong, a state judgment invoking the procedural bar must rest on a state law ground that is both independent of the merits of the federal claim and is an adequate basis for the state court's decision. *Munson v. Kapture*, 384 F.3d 310, 313-14 (6th Cir. 2004).

Under the fourth prong, a claim that is procedurally defaulted in state court will not be reviewable in federal habeas corpus unless the petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or that failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 751. "Cause" is a legitimate excuse for the default, and "prejudice" is actual harm resulting from the alleged constitutional violation. *Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984), *cert. denied*, 490 U.S. 1068 (1985). If a petitioner fails to show cause for his procedural default, the reviewing court need not address the issue of prejudice. *Smith v. Murray*, 477 U.S. 527 (1986).

Simply stated, a federal court may review federal claims:

-10-

> that were evaluated on the merits by a state court. Claims that were not so evaluated, either because they were never presented to the state courts (i.e., exhausted) or because they were not properly presented to the state courts (i.e., were procedurally defaulted), are generally not cognizable on federal habeas review.

*Bonnell v. Mitchel,* 301 F.Supp.2d 698, 722 (N.D. Ohio 2004).  The above standards apply to the

Court's review of Petitioner's claims.

**V.     STANDARD OF REVIEW**

The undersigned further recommends that the Court find that the AEDPA governs this

Court's review of the instant case because Petitioner filed his petition for the writ of habeas corpus

pursuant to 28  U.S.C. § 2254 on January 23, 2012, well after the act's effective date of April 26,

1996.  *Harpster v. Ohio*, 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied*, 522 U.S. 1112 (1998).

Under Section 2254, a state prisoner is entitled to relief if he is held in custody in violation of the

United States Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(d).

The AEDPA sets forth the standard of review for the merits of a petition for a writ of habeas

corpus.  The AEDPA provides:

> (d)     An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1)     resulted in a decision that was *contrary to*, or involved an *unreasonable application of*, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (emphasis added).  In *Williams v. Taylor*, the Supreme Court clarified the

language of 28 U.S.C. § 2254(d) and stated:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  Further, the Supreme Court declared that "a

federal habeas court making the 'unreasonable application' inquiry should ask whether the state

-11-

court's application of clearly established federal law was objectively unreasonable." *Id.* Elaborating on the term "objectively unreasonable," the Court stated that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.*; *see also Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6th Cir. 2001).

The Sixth Circuit Court of Appeals offers the following guidelines for applying the AEDPA limitations:

A. Decisions of lower federal courts may not be considered.

B. Only the holdings of the Supreme Court, rather than its dicta, may be considered.

C. The state court decision may be overturned only if:

   1. It '[applies] a rule that contradicts the governing law set forth in [Supreme Court of the United States] cases,' [the Supreme Court precedent must exist at the time of petitioner's direct appeal] or;

   2. the state-court decision 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent;' or

   3. 'the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case;' or

   4. the state court 'either unreasonably extends a legal principle from [a Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'

D. Throughout this analysis the federal court may not merely apply its own views of what the law should be. Rather, to be overturned, a state court's application of Supreme Court of the United States precedent must also be objectively unreasonable. That is to say, that 'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.' 'An unreasonable application of federal law is different from an incorrect or erroneous application of federal law.'

E. Findings of fact of the state courts are presumed to be correct. 'The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.'

*Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6th Cir. 2001) (internal citations omitted).

-12-

Finally, a reviewing federal court is bound by the presumption of correctness, under which the federal court is obligated to "accept a state court's interpretation of the state's statutes and rules of practice." *Hutchinson v. Marshall*, 744 F.2d 44, 46 (6th Cir. 1984), *cert. denied*, 469 U.S. 1221 (1985); *see also Duffel v. Duttion*, 785 F.2d 131, 133 (6th Cir. 1986).  The presumption of correctness is set forth in 28 U.S.C. § 2254(e), which provides:

> (e)(1)In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.

28 U.S.C. § 2254(e).  The presumption of correctness applies to basic primary facts, and not to mixed questions of law and fact.  *Levine v. Torvik*, 986 F.2d 1506, 1514 (6th Cir. 1993), *cert. denied,* 509 U.S. 907 (1993).  The presumption also applies to "implicit findings of fact, logically deduced because of the trial court's ability to adjudge the witnesses' demeanor and credibility." *McQueen v. Scroggy*, 99 F.3d 1302, 1310 (6th Cir. 1996), *cert. denied*, 520 U.S. 1257 (1997).  Furthermore, a reviewing federal court is not free to ignore the pronouncement of a state appellate court on matters of law.  *See Central States, Southeast & Southwest Areas Pension Fund v. Howell*, 227 F.3d 672, 676, n.4 (6th Cir. 2000).  Petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

The United States Supreme Court recently observed:

> Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal.  *Jackson v. Virginia*, 443 U.S. 307, 332, n. 5, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (Stevens, J., concurring in judgment).  As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Harrington v. Richter,* __ U.S. __, 131 S.Ct. 770, 786-787 (2011).

## VI.    ANALYSIS

### A.    Ground One

**THE TRIAL COURT VIOLATED THE APPELLANT'S DUE PROCESS RIGHTS WHEN IT IMPROPERLY INSTRUCTED THE JURY WITH REGARDS TO AGGRAVATED MURDER.**

-13-

The Fifth District provided the following analysis of Petitioner's first assignment of error based upon the trial court instruction on prior calculation and design:

{¶ 25} Appellant argues that the court erred in the jury instructions concerning the definition of prior calculation and design by creating an "obvious bright line test."

{¶ 26} Jury instructions must fairly and correctly state the law applicable to the evidence presented at trial. *Wozniak v. Wozniak* (1993), 90 Ohio App.3d 400, 410, 629 N.E.2d 500; see, also, *Kokitka v. Ford Motor Co.* (1995), 73 Ohio St.3d 89, 93, 1995–Ohio–84, 652 N.E.2d 671. If taken in their entirety, the instructions fairly and correctly state the law applicable to the evidence presented at trial, reversible error will not be found merely on the possibility that the jury may have been misled. *Wozniak v. Wozniak*, supra. Rather, this Court must determine whether the jury charge in its entirety resulted in prejudice. *State v. Jackson* (2001), 92 Ohio St.3d 436, 446, 2001-Ohio-1266, 751 N.E.2d 946.

{¶ 27} The Ohio Supreme Court has stated that it is not possible to formulate a bright-line test to distinguish between the presence or absence of prior calculation and design, but instead each case turns on the particular facts and evidence presented at trial. *State v. Taylor* (1997), 78 Ohio St.3d 15, 20. In *Taylor v. Mitchell* (2003), 296 F.Supp.2d 784, the habeas corpus action considered by the U.S. Northern District of Ohio Federal Court regarding the conviction reviewed by the Ohio Supreme Court in *Taylor*, supra, the federal court summarized Ohio law regarding prior calculation and design as follows:

{¶ 28} "In view of the understandable lack of a bright line rule governing determinations of whether the proof shows prior calculation and design, Ohio courts have consistently considered various factors in addition to those-the defendant's relationship with the victim, the thought given by the defendant to the means and place of the crime, and the timing of the pertinent events-recited in *Taylor*, 78 Ohio St.3d at 19, 676 N.E.2d 82, when determining whether the defendant engaged in prior calculation and design.

{¶ 29} "Among these other, frequently considered factors are:

{¶ 30} "—whether the defendant at any time expressed an intent to kill.

{¶ 31} "—there was a break or interruption in the encounter, giving time for reflection.

{¶ 32} "—whether the defendant displayed a weapon from the outset.

{¶ 33} "—whether the defendant retrieved a weapon during the encounter.

{¶ 34} "—the extent to which the defendant pursued the victim.

{¶ 35} "—the number of shots fired." *Id.* at 821–822, internal citations omitted.

{¶ 36} The trial court instructed the jury as follows:

{¶ 37} "Ladies and gentlemen, prior calculation and design means that the purpose to cause the death was reached by a definite process of reasoning in advance of the homicide which process of reasoning must have included a mental plan involving studied consideration of the method and means with which to cause the death. To

-14-

constitute prior calculation there must have been sufficient time and opportunity for the planning of an act of homicide, and the circumstances surrounding the homicide must show a scheme designed to carry out the calculated decision to cause the death. No definite period of time must elapse and no particular amount of consideration must be given, but acting on the spur of the moment or after momentary consideration of the purpose to cause the death is not sufficient.

{¶ 38} "You may consider the following factors when determining whether prior calculation and design exist in this case. Whether the victim, Ms. Snyder, and the Defendant, Mr. Snyder, knew each other, and if so, whether their relationship was strained; whether Mr. Snyder chose the murder site or weapon before the murder; whether the killing was a drawn out act or an eruption of events; whether Mr. Snyder at any time expressed an intent to kill Debby Snyder; whether there was a break or interruption in the encounter giving time for reflection; whether Mr. Snyder displayed a weapon from the outset; whether Mr.Snyder retrieved a weapon during the encounter; the extent to which Mr. Snyder pursued Debby Snyder; and then lastly, the number of shots fired."

{¶ 39} The trial court's instruction correctly stated the law as outlined in *Taylor v. Mitchell*, supra. Contrary to appellant's argument, the court did not create a bright-line test to distinguish between the presence and absence of prior calculation and design. Rather, the court instructed that the jury may consider the factors in determining whether appellant acted with prior calculation and design, which is a correct statement of Ohio law.

*Snyder,* supra, at *4-5.

Respondent contends that Petitioner is procedurally barred from raising the constitutional issue in Ground One because he did not raise the issue as a constitutional violation in his direct appeal. To satisfy the exhaustion requirement, a claim must be "fairly presented" to the state courts, meaning that the petitioner must have asserted both the factual and legal bases for the claims in the state courts. See *McMeans,* supra, at 681; see also *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir.2006)(citing *McMeans*). A claim must also be presented to the state courts as a federal constitutional issue.  See *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir.1984).  The burden is on the prisoner to prove exhaustion.  *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir.1994).

Procedural default occurs when the petitioner fails to fairly present his federal constitutional claim to the State courts in the manner required by state law.  *Wainwright v. Sykes*, 433 U.S. 72, 86–87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); *Ernie v. Isaac*, 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982).  The failure to present a claim constitutes a waiver of the argument, unless the petitioner can present cause for the default and actual prejudice from the constitutional error. *Murray*

-15-

*v. Carrier*, 477 U.S. 478, 485, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986);  *Sawyer v. Whitley*, 505 U.S. 333, 338, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992).

"Fairly presenting" a claim requires more than just mentioning it in passing.  Rather, a petitioner must present both the factual and legal basis for his claims to the state court. *Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir.2006) (quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir.2003)).  Even if there were "variations in the legal theory or factual allegations urged in [the claim's] support," the petitioner must have presented state courts with a claim similar enough "that the ultimate question would have been the same."  *Jells v. Mitchell*, 538 F.3d 478, 504 (6th Cir.2008). Neither a "somewhat similar state-law claim," *Anderson v. Harless*, 459 U.S. 4, 6, (1982), nor a general allegation of a fair trial or due-process violation is enough.  *McMeans*, supra, at  681.

Although Petitioner invokes the phrase "due process" in his first assignment of error, it is clear that he did not rely upon any constitutional case law in his appellate brief, nor did the Fifth District undertake any constitutional analysis of his claim.  The assignment of error was raised and analyzed purely as a matter of state law.  Furthermore, Petitioner has not asserted any cause for his failure to raise his constitutional claim in his direct appeal.   Accordingly, the undersigned recommends that the Court find that the claim asserted in Ground One is procedurally defaulted.

Assuming *arguendo* that no procedural default occurred, the undersigned recommends that Ground One has no merit.  In order for habeas relief to be warranted on the basis of incorrect jury instructions, a petitioner must show more than that the instructions are undesirable, erroneous, or universally condemned; taken as a whole they must be so infirm that they rendered the entire trial fundamentally unfair.  *Henderson v. Kibbe*, 431 U.S. 145, 97 S.Ct. 1730, 52 L.Ed.2d 203 (1977).  The only question for a habeas court to consider is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process."  *Estelle v. McGuire*, 502 U.S. 62, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991), quoting *Cupp v. Naughten*, 414 U.S. 141, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973). The category of infractions that violate fundamental fairness is very narrow.  *Byrd v. Collins*, 209 F.3d 486 (6th Cir.2000), citing  *Dowling v. United States*, 493 U.S. 342, 352, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990).  Here, the jury instruction at issue was warranted based

-16-

upon the facts as summarized by the Fifth District Court of Appeals.  Accordingly, the undersigned recommends that Ground One is procedurally barred, or, in the alternative, is meritless.

### B.    Ground Two

**THE TRIAL COURT VIOLATED THE APPELLANT'S DUE PROCESS RIGHTS WHEN IT FAILED TO PROVIDE JURY INSTRUCTIONS OF MANSLAUGHTER, INVOLUNTARY MANSLAUGHTER AND SELF-DEFENSE TO THE JURY.**

The Fifth District provided the following analysis of Petitioner's second assignment of error based upon the trial court's failure to instruct the jury on a lesser-included offenses and self-defense:

{¶ 41} In his second assignment of error, appellant argues that the court erred in refusing to instruct the jury on the lesser-included offenses of voluntary manslaughter and involuntary manslaughter, and on the affirmative defense of self-defense.

{¶ 42} An instruction is not warranted every time any evidence is presented on a lesser-included offense. There must be "sufficient evidence" to "allow a jury to reasonably reject the greater offense and find the defendant guilty on a lesser included (or inferior-degree) offense." (Emphasis sic.) *State v.. Shane*, 63 Ohio St.3d at 632–633, 590 N.E.2d 272; *State v. Conway*, 108 Ohio St.3d at 240,842 N.E.2d at 1027, 2006–Ohio–791 at ¶ 134. (Emphasis in original).

{¶ 43} Voluntary manslaughter is defined in R.C. 2903.03(A):

{¶ 44} "No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly cause the death of another[.]"

{¶ 45} "Before giving a jury instruction on voluntary manslaughter in a murder case, the trial judge must determine whether evidence of reasonably sufficient provocation occasioned by the victim has been presented to warrant such an instruction." *State v. Shane* (1992), 63 Ohio St.3d 630, 590 N.E.2d 272, at paragraph one of the syllabus. "The trial judge is required to decide this issue as a matter of law, in view of the specific facts of the individual case. The trial judge should evaluate the evidence in the light most favorable to the defendant, without weighing the persuasiveness of the evidence." *Id.* at 637, 590 N.E.2d 272, citing *State v. Wilkins* (1980), 64 Ohio St.2d 382, 388, 415 N.E.2d 303. "An inquiry into the mitigating circumstances of provocation must be broken down into both objective and subjective components." Shane, at 634, 590 N.E.2d 272.

{¶ 46} When determining whether provocation was reasonably sufficient to induce sudden passion or sudden fit of rage, an objective standard must be applied. Id. "For provocation to be reasonably sufficient, it must be sufficient to arouse the passions of an ordinary person beyond the power of his or her control." *Id.* at 635, 590 N.E.2d 272. Thus, the court must furnish "the standard of what constitutes adequate provocation, i.e., that provocation which would cause a reasonable person to act out of passion rather than reason." (Citations omitted.) *Id.* at 634, fn. 2, 590 N.E.2d 272. "If insufficient evidence of provocation is presented, so that no reasonable jury would decide that an actor was reasonably provoked by the victim, the trial judge must, as a matter of law, refuse to give a voluntary manslaughter instruction." *Shane*, at 364.

-17-

The subjective component of the analysis requires an assessment of "whether this actor, in this particular case, actually was under the influence of sudden passion or in a sudden fit of rage." Id. "Fear alone is insufficient to demonstrate the kind of emotional state necessary to constitute sudden passion or fit of rage." *State v. Mack* (1998), 82 Ohio St.3d 198, 201, 694 N.E.2d 1328.

{¶ 47} However, any provocation by the victim must be sufficient to arouse the passions of an ordinary person beyond his or her control. *Shane*, 63 Ohio St.3d at 634–35, 590 N.E.2d 272. The provocation must be reasonably sufficient to incite the defendant to use deadly force. *Id.* at 635, 590 N.E.2d 272. Mere words do not constitute sufficient provocation in most situations. *Id.* at 637, 590 N.E.2d 272.

{¶ 48} In the instant case, both the coroner and the expert pathologist who testified on appellant's behalf agreed that the primary cause of death was the incised wounds to the neck cause by appellant cutting her throat with the utility knife. Appellant's expert testified that the gunshot wounds would not have killed Debby. The coroner testified that she would have at some point died from the gunshot wounds, but the lacerations to her neck were fatal in and of themselves.

{¶ 49} From the evidence presented at trial, a jury could not reasonably find that appellant acted out of rage or passion caused by provocation sufficient to arouse the passions of an ordinary person beyond his or her control. At the time of the attack with the knife the victim had been shot by appellant and was sitting in her SUV. By his own admission she was in a weakened state. Appellant went into the garage, retrieved a knife and came back to Debby with the knife. He testified at trial and stated in his interview with police that he just wanted to shut her up. Mere words do not constitute sufficient provocation in most situations. In this situation, appellant testified that had she not hit him with the shovel earlier, the argument would have been no different than most of their fights and he wouldn't be in court facing a murder charge. Therefore by his own admission, he was provoked primarily by the shovel and not the words. Appellant may have been able to argue that the gunshots were reasonably provoked by the alleged incident with the shovel, but at the point where he retreats and comes back to her with a knife, a reasonable person would not be incited to use deadly force. Debby had been hit four times by appellant's shots and was sitting in her vehicle. Even if we believe appellant's claim that she continued to taunt him about other men she had slept with, such evidence was not sufficient to incite a reasonable person to the use of deadly force. The court did not err in refusing appellant's requested instruction on voluntary manslaughter.

{¶ 50} Involuntary manslaughter is defined by R.C. 2903.04:

{¶ 51} "(A) No person shall cause the death of another or the unlawful termination of another's pregnancy as a proximate result of the offender's committing or attempting to commit a felony.

{¶ 52} "(B) No person shall cause the death of another or the unlawful termination of another's pregnancy as a proximate result of the offender's committing or attempting to commit a misdemeanor of any degree, a regulatory offense, or a minor misdemeanor other than a violation of any section contained in Title XLV of the Revised Code that is a minor misdemeanor and other than a violation of an ordinance of a municipal corporation that, regardless of the penalty set by ordinance for the violation, is substantially equivalent to any section contained in Title XLV of the Revised Code that is a minor misdemeanor."

{¶ 53} The evidence does not support a conviction for involuntary manslaughter and an acquittal for aggravated murder. The evidence demonstrated that the front of Debby's neck had three incisions, measuring up to nine inches in length and up to four inches in depth. Roughly one-half of her neck was transected, including her larynx and part of her esophagus. Both expert witnesses testified that the nature of the killing demonstrated "overkill." The evidence only demonstrates that this was a deliberate act to kill the victim, and not, as appellant argues in his brief, a death that occurred in the course of committing felonious assault. The court did not err in refusing appellant's requested instruction on involuntary manslaughter.

{¶ 54} To establish the affirmative defense of self-defense, the defendant must establish the following elements by a preponderance of the evidence: (1) that he " * * * was not at fault in creating the situation giving rise to the affray"; (2) that he had " * * * a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of" such force; and (3) that he " * * * must not have violated any duty to retreat or avoid the danger." These elements are cumulative and failure to prove any one of them, by a preponderance of the evidence, fails to demonstrate self-defense. *State v. Williford* (1990), 49 Ohio St.3d 247, 248, citing *State v. Jackson* (1986), 22 Ohio St.3d 281, 284, certiorari denied (1987), 480 U.S. 917.

{¶ 55} As noted earlier, Debby died as a result of the laceration wounds to her neck. While appellant's testimony that she came at him with a shovel threatening to kill him may have required an instruction as to self-defense regarding the gunshot wounds, she died as a result of the wounds to her neck. At that point in time he could not have a bona fide belief that he was in imminent danger of death or great bodily harm and his only means of escape was the use of deadly force. He knew he had hit her with his gunshots at least once, as he saw her fall to her knees. She was in her vehicle without the shovel when he went back at her with the knife. He clearly had an opportunity to retreat and avoid the danger because he had in fact retreated into the garage to retrieve another weapon. While he testified that at one point she wrestled the knife away from him and he was in danger, he is not entitled to a self-defense instruction based on this evidence because he created the situation giving rise to the affray by coming out to her SUV armed with a knife. The court did not err in refusing to give appellant's requested self-defense instruction.

{¶ 56} The second assignment of error is overruled.

*Snyder,* supra, at *5-8.

Like the claim in Ground One, Petitioner invoked the phrase "due process" in his second assignment of error, but he did not rely upon any constitutional case law in his appellate brief, nor did the Fifth District undertake any constitutional analysis of his claim. The assignment of error was raised and analyzed purely as a matter of state law. Furthermore, Petitioner has not asserted any cause for his failure to raise his constitutional claim in his direct appeal. Accordingly, the undersigned recommends that the Court find that the claim asserted in Ground Two is procedurally procedurally. In the alternative, the Court recommends that the jury instructions at issue were not warranted based upon the facts as summarized by the Fifth District Court of Appeals. Accordingly,

-19-

the undersigned recommends that Ground Two is procedurally defaulted, or, in the alternative, has

no merit.

### C.   <u>Ground Three</u>

**GROUND THREE: THE TRIAL COURT ABUSED ITS DISCRETION AND DENIED THE APPELLANT HIS DUE PROCESS RIGHTS TO A FAIR TRIAL BY FAILING TO GRANT HIS MOTION FOR MISTRIAL.**

The Fifth District provided the following analysis of Petitioner's third assignment of error

based upon the trial court's failure to grant a mistrial:

{¶ 57} Appellant next argues that the court erred in overruling his motion for mistrial based on comments the court made in the presence of the jury regarding lesser-included offense instructions.

{¶ 58} The granting of a mistrial rests within the sound discretion of the trial court as it is in the best position to determine whether the situation at hand warrants such action. *State v. Glover* (1988), 35 Ohio St.3d 18, 517 N.E.2d 900; *State v. Jones* (1996) 115 Ohio App.3d 204, 207, 684 N.E.2d 1304, 1306.

{¶ 59} "A mistrial should not be ordered in a criminal case merely because some error or irregularity has intervened * * *." *State v. Reynolds* (1988), 49 Ohio App.3d 27, 33, 550 N.E.2d 490, 497. The granting of a mistrial is necessary only when a fair trial is no longer possible. *State v. Franklin* (1991), 62 Ohio St.3d 118, 127, 580 N.E.2d 1, 9; *State v. Treesh* (2001), 90 Ohio St.3d 460, 480, 739 N.E.2d 749, 771. When reviewed by the appellate court, we should examine the climate and conduct of the entire trial, and reverse the trial court's decision as to whether to grant a mistrial only for a gross abuse of discretion. *State v. Draughn* (1992), 76 Ohio App.3d 664, 671, 602 N.E.2d 790, 793–794, citing *State v. Maurer* (1984), 15 Ohio St.3d 239, 473 N.E.2d 768, certiorari denied (1985), 472 U.S. 1012, 105 S.Ct. 2714, 86 L.Ed.2d 728; *State v. Gardner* (1998), 127 Ohio App.3d 538, 540–541, 713 N.E.2d 473, 475.

{¶ 60} Appellant stipulated prior to trial that he caused the death of his wife. By doing so, the sole issue became appellant's mental state at the time of the death. Prior to trial, the court explained to the jury that appellant had stipulated that he caused his wife's death and the jury would decide the culpable mental state of appellant at the time of his death. Tr. 43.

{¶ 61} When the court ruled that the jury would not be instructed on the lesser-included offense of manslaughter, counsel for appellant moved for a mistrial on the basis that the court made comments to the jury that appellant would be "found guilty of something." Tr. 1205. Appellant appears to now argue that the trial court promised him an instruction on manslaughter and the entire trial was based on facts that appellant was under the influence of a sudden passion or fit of rage.

{¶ 62} Appellant has not cited to any place in the transcript where the judge stated in the presence of the jury that appellant would be "found guilty of something." The trial court clearly stated to appellant and the jury throughout the trial that the court may or may not instruct on voluntary manslaughter. Prior to the stipulation, the court stated in a preliminary hearing that he'd make a decision on the instruction based on the evidence presented at trial. During jury selection the court did state that there is

a possibility the jurors would consider the offense of voluntary manslaughter but that was not definitely a consideration for the jury. Tr. 44, 46. In opening statement, counsel for appellant acknowledged that he would ask the judge based on the evidence presented to instruct the jury on manslaughter to "include that passion, that rage." Tr. 271.

{¶ 63} Contrary to appellant's argument, the comments by the court did not require a mistrial. It was clear to all parties throughout the trial that voluntary manslaughter may or may not be an option presented to the jury. Further, in response to counsel's motion for mistrial, the court gave the following curative instruction:

{¶ 64} "I have ruled that I will not instruct you on voluntary manslaughter. You will not consider the possibility of rendering a verdict on voluntary manslaughter in this case. As a matter of law I have ruled that the jury should not have that opportunity to make a decision on an offense, an inferior offense, that we call voluntary manslaughter. So, I, in that context of a possible instruction on voluntary manslaughter, indicated I believe when I was talking to Mr. Baca that Mr. Snyder would be found guilty of something.  You may not remember that. If you do remember it I want you to know now that I'm not going to instruct you on voluntary manslaughter and that comment I made then is not correct.  Mr. Snyder can be found guilty or not guilty of the remaining charges in this indictment, aggravated murder with a firearm specification, murder with a firearm specification, felonious assault with a firearm specification. So, disregard the comment I made if you heard me say that because it does not apply now. That only was applicable in the context of an instruction on voluntary manslaughter if I was going to give that." Tr. 1228.

{¶ 65} The court did not abuse its discretion in overruling the motion for a mistrial. Appellant has not demonstrated that a fair trial was no longer possible.

{¶ 66} The third assignment of error is overruled.

*Snyder,* supra, at *8-10.

When conducting habeas review of a trial decision of a state court not touching on a specific provision of the Bill of Rights, reversal is not warranted unless the comment "was potentially so misleading and prejudicial that it deprived [the defendant] of a constitutionally fair trial." *Donnelly v. DeChristoforo*, 416 U.S. 637, 641–42, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974) (noting that "not every trial error or infirmity which might call for application of supervisory powers correspondingly constitutes a 'failure to observe that fundamental fairness essential to the very concept of justice' "). Here, the trial judge corrected his earlier statement regarding the potential verdict in the case. Because the trial court explained his earlier statement to the jury, and explained that the statement was erroneous based upon the jury instructions, Petitioner cannot demonstrate that he was denied a constitutionally fair trial.   Accordingly, the undersigned recommends that Ground Three has no merit.

-21-

### D.     Ground Four

**THE TRIAL COURT ABUSED ITS DISCRETION AND DENIED THE APPELLANT HIS DUE PROCESS RIGHTS TO A FAIR TRIAL BY ALLOWING TESTIMONY IN VIOLATION OF EVIDENCE RULE 401 AND 403.**

The Fifth District provided the following analysis of Petitioner's fourth assignment of error based upon the trial court's admission of the testimony of Brad Bullard:

> {¶ 67} In his fourth assignment of error, appellant argues that the court erred in admitting the testimony of Brad Bullard that while playing horseshoes at appellant's son's home in the summer of 2009, he heard appellant talking about an issue with Debby concerning checks Debby wrote on the business account, and appellant stated that he would cut Debby's throat. Tr. 474.

> {¶ 68} The admission or exclusion of relevant evidence rests within the sound discretion of the trial court. *State v. Sage* (1987), 31 Ohio St.3d 173, 51 N.E.2d 343, paragraph 2 of the syllabus. An abuse of discretion implies that the court acted unreasonably, arbitrarily or unconscionably. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140.

> {¶ 69} Appellant argues that the danger of unfair prejudice from this testimony outweighed its probative value and the evidence therefore should have been excluded under Evid. R. 403(A). We disagree. The testimony directly related to the issue of prior calculation and design. Just a few months before appellant killed his wife, he was heard saying that he would cut her throat at a time when he was upset with her concerning money issues surrounding their business. On the day of the murder, he caused her death by cutting her throat when they had been fighting about money issues related to the business. The evidence was clearly probative on the issue of prior calculation and design and while prejudicial, its probative valued was not outweighed by any danger of unfair prejudice.

> {¶ 70} The fourth assignment of error is overruled.

*Snyder,* supra, at *4-5.

Federal courts may not issue a writ of habeas corpus on the basis of a perceived error of state law. *Pulley v. Harris*, 465 U.S. 37, 41, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984); *Smith v. Sowders*, 848 F.2d 735, 738 (6th Cir.1988). Trial-court errors in evidence law only warrant federal habeas review if "the error renders the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment." *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir.), cert. denied, 543 U.S. 892, 125 S.Ct. 168, 160 L.Ed.2d 156 (2004) (citing *Estelle v. McGuire*, 502 U.S. 62, 69–70, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991)). The Supreme Court has repeatedly emphasized that this standard creates an extremely high bar for a bare due-process objection to admitted

evidence.  See, e.g., *Perry v. New Hampshire*, 132 S.Ct. 716, 723 (2012) (citing *Napue v. Illinois*, 360 U.S. 264, 269 (1959)).  The undersigned recommends that the Court find that, even if admitting Bullard's testimony was an error, his testimony, taken in the context of the strength of the remainder of the trial testimony, did not deprive Petitioner of a fair trial, and, therefore, Ground Four is meritless.

>        **E.        Ground Five**
>
>        **THE TRIAL COURT ABUSED ITS DISCRETION AND DENIED THE APPELLANT HIS DUE PROCESS RIGHTS TO A FAIR TRIAL BY NOT ALLOWING EVIDENCE TO THE VICTIM'S CHARACTER REGARDING SPECIFIC INSTANCES OF CONDUCT RELATED TO THE VICTIM'S CHARACTER AS IT RELATES TO A CLAIM FOR SELF-DEFENSE OFFERED BY THE APPELLANT.**

The Fifth District provided the following analysis of Petitioner's fifth assignment of error based upon the trial court's ruling on victim character evidence:

> {¶ 71} In his fifth assignment of error, appellant argues the court erred in excluding evidence of specific instances of conduct concerning his wife's aggression toward him.  Counsel proffered that appellant would have testified that in late 2004 or 2005, Debby entered appellant's grocery and bait store in a violent fashion, picked up a soda can and hurled it at appellant, striking him just above his eyebrow. Tr. 983. Debby then jumped on appellant, knocking him to the ground and beating him. Id.

> {¶ 72} Evid. R. 404(A)(2) governs the admission of evidence concerning the character of a victim:

> {¶ 73} "(A) Character evidence generally. Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, subject to the following exceptions:

> {¶ 74} "(2) Character of victim. Evidence of a pertinent trait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor is admissible; however, in prosecutions for rape, gross sexual imposition, and prostitution, the exceptions provided by statute enacted by the General Assembly are applicable."

> {¶ 75} Evid. R. 405 governs the permissible methods for proving character:

> {¶ 76} "(A) Reputation or opinion. In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into relevant specific instances of conduct.

> {¶ 77} "(B) Specific instances of conduct. In cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense, proof may also be made of specific instances of his conduct."

{¶ 78} The court permitted appellant to present evidence of Debby's reputation for violence pursuant to Evid. R. 405(A). However, appellant's reliance on Evid. R. 405(B) is mistaken. While appellant argues this evidence was relevant to show his state of mind and therefore relevant to his claim of self-defense or his claim that he acted in a fit of rage or passion, specific instances of conduct are permitted only when the character trait of a person is an essential element of the claim or defense. Debby's propensity for violence was not an essential element of appellant's claim that he acted out of a fit of passion or rage, and her propensity for violence is not an essential element of the defense of self-defense.

{¶ 79} The Ohio Supreme Court has held that a defendant asserting self-defense cannot introduce evidence of specific instances of a victim's conduct to prove that the victim was the initial aggressor. *State v. Barnes* (2002), 94 Ohio St.3d 21, syllabus. The 11th District Court of Appeals has applied the reasoning in Barnes in the context of a voluntary manslaughter "defense," finding that the trial court did not err in limiting a defendant to reputation or opinion evidence. *State v. Handwork*, Portage App. No.2002–P-0134, 2004-Ohio-6181, ¶ 70–73.

{¶ 80} Further, appellant has not demonstrated prejudice from the exclusion of his testimony concerning this incident. He was permitted to present evidence of her reputation for violence and evidence that he sought a civil protection order against Debby at one point in their marriage. Further, in the DVD of appellant's statement to police which was played for the jury, appellant talks about an incident when Debby hit him in the head with a Coke can in the store and was arrested for domestic violence. Tr. 557.

{¶ 81} The fifth assignment of error is overruled.

*Snyder,* supra, at *11-12.

Like Ground Four, the Court's inquiry is limited to whether the failure to admit the proposed testimony "renders the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment." *McAdoo,* supra. Here, the jury heard Petitioner's account of the grocery/bait store altercation with his wife through the admission of the videotaped statement he gave to the police.  Consequently, the undersigned recommends that the Court conclude that the exclusion of the evidence did not deprive Petitioner of a fair trial.  As a consequence, the undersigned recommends that the Court find that Ground Five has no merit.

## F.     Ground Six

### THE EVIDENCE IS INSUFFICIENT TO SUSTAIN THE CONVICTION AND THE VERDICT IS AGAINST THE MANIFEST WEIGHT OF EVIDENCE.

The Fifth District provided the following analysis of Petitioner's sixth assignment of error based upon the sufficiency of the evidence and the manifest weight of the evidence:

-24-

{¶ 82} In his final assignment of error, appellant argues the evidence was insufficient to support the convictions for aggravated murder and felonious assault, and that the judgments of conviction were against the manifest weight of the evidence.

{¶ 83} In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a thirteenth juror and "in reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in evidence the jury 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541, 1997–Ohio–52, quoting *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717.

{¶ 84} An appellate court's function when reviewing the sufficiency of the evidence is to determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.

{¶ 85} Aggravated murder is defined:

{¶ 86} "(A) No person shall purposely, and with prior calculation and design, cause the death of another or the unlawful termination of another's pregnancy."

{¶ 87} Felonious assault is defined:

{¶ 88} "(A) No person shall knowingly do either of the following:

{¶ 89} "(2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance."

{¶ 90} There was no dispute that appellant caused physical harm to Debby by means of a deadly weapon, nor was there any dispute that appellant caused her death. He argues that the evidence was insufficient to show that he acted purposely, knowingly, and/or with prior calculation and design because his "extreme emotions" at the time "contradicted" that he acted knowingly, purposely and with prior calculation and design.

{¶ 91} Purposely and knowingly are defined by R.C. 2901.22:

{¶ 92} "(A) A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature.

{¶ 93} "(B) A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."

{¶ 94} The Ohio Supreme Court has stated that courts are to look to three primary factors when determining whether prior calculation and design exists in a particular case: (1) whether the victim and the accused knew each other and, if so, whether their relationship was strained; (2) whether the accused chose the murder site or weapon

-25-

before the murder, and (3) whether the killing was a drawn-out act or an eruption of events. *State v. Taylor* (1997), 78 Ohio St.3d 15, 19, 676 N.E.2d 82. As discussed in the first assignment of error, relevant factors include whether the defendant at any time expressed an intent to kill; whether there was a break or interruption in the encounter, giving time for reflection; whether the defendant displayed a weapon from the outset; whether the defendant retrieved a weapon during the encounter; the extent to which the defendant pursued the victim; and the number of shots fired. *Taylor v. Mitchell*, supra.

{¶ 95} In the instant case, appellant admitted to shooting at his wife, emptying and reloading his gun. Appellant admitted that after firing the two warning shots, he was trying to hit her with his shots. She was struck with four bullets. He admitted to going into the garage to retrieve a knife after she had been shot four times, and cutting her throat to get her to shut up. Her neck had three deep incisions severing about half her neck, including her larynx and part of her esophagus. His own expert pathologist testified that the acts were deliberate. The jury's finding that appellant acted knowingly and purposely is not against the manifest weight or sufficiency of the evidence.

{¶ 96} As to the element of prior calculation and design, appellant and Debby had an extremely strained relationship. Several months earlier, appellant was heard saying he would cut Debby's throat when he was upset with her about financial issues; by his own admission they were fighting about money shortly before the murder. Appellant expressed frustration to his step-daughter earlier on the day of the murder because he knew Debby had been with her boyfriend. He knew Debby was coming home that night because she called him around 8:00 p.m. and told him she would be home later. Appellant had a pistol in his pocket when his wife came home. Appellant's rendition of the fight and the blood at the scene indicate that this was a drawn out killing spanning the length of the driveway, with signs of a struggle. Appellant admitted to a break in the encounter when he went to the garage to get a knife. He then pursued Debby with the knife when, having been shot four times, she was sitting in her SUV. The jury's finding that appellant killed Debby with prior calculation and design is not against the manifest weight or sufficiency of the evidence.

{¶ 97} The sixth assignment of error is overruled.

*Snyder,* supra, at *12-14.

The due process clause of the Fourteenth Amendment requires that a criminal conviction be based upon proof beyond a reasonable doubt as to every fact necessary to constitute the offense charged. *In re Winship*, 397 U.S. 358, 363-64, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). The standard for determining sufficiency of the evidence is "whether after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 317, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In reaching its determination as to the sufficiency of the evidence, a court may

-26-

not substitute its determination of guilt or innocence for that of the factfinder, nor may it weigh the credibility of witnesses. See *id*.; see also *Walker v. Engle*, 703 F.2d 959, 970 (6th Cir.1983).

To determine whether the state court unreasonably applied the sufficiency-of-the-evidence standard of *Jackson v. Virginia*, * * * "[f]irst, [the Court] must ask whether the evidence itself was sufficient to convict.... [and] [t]he inquiry ends if [the Court] determines that there was sufficient evidence." *Stewart v. Wolfenbarger*, 595 F.3d 647, 653 (6th Cir.2010) (citation omitted). Second, "[i]f [the Court] find[s] that the evidence is insufficient to convict, [the Court] must then apply AEDPA deference and ask whether the state court was 'objectively unreasonable' in concluding that a rational trier of fact could find [petitioner] guilty beyond a reasonable doubt." *Id.* (citation omitted). The result of this double deference is that "habeas corpus relief is appropriate based on insufficient evidence only where we find, after viewing the evidence in the light most favorable to the prosecution, that no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Parker v. Renico*, 506 F.3d 444, 448 (6th Cir.2007). On habeas review, federal courts must assume that the jury "resolve[d] conflicts in the testimony," "weigh[ed] the evidence," and drew "reasonable inferences" therefrom. *Jackson*, supra, at 319. A court should interfere with a jury verdict only to the extent necessary to guarantee the fundamental protections of due process of law.

Based upon the factual findings set forth by the Fifth District Court of Appeals[2], the undersigned recommends that the Court find that the state appellate court applied the correct

---

[2]A constitutional sufficiency of the evidence challenge requires a careful review of the entire trial transcript by the habeas court when a petitioner disagrees with the challenged state court opinion's summary of the trial testimony or relevant facts, *Jeffries v. Morgan*, 522 F.3d 640, 644 (6th Cir.2008) citing *Clark v. Waller*, 490 F.3d 551, 555 (6th Cir.), cert. denied, 552 U.S. 1030, 128 S.Ct. 630, 169 L.Ed.2d 407 (2007) (no general rule requiring court to review transcript in all cases). The court is not generally inclined to require the submission of complete trial transcripts, except where the claims of the petition would so require. See, e.g., *Kincaid v. Welch*, No. 1:09 CV 00890, 2009 WL 4110878, at *1 (N.D.Ohio Nov.19, 2009); *Pankey v. Smith*, No. 4:09CV617, 2009 WL 3622891, at *11–*12 (N.D.Ohio Oct.29, 2009).

Supreme Court standard to Petitioner's sufficiency of the evidence claim, and that the Fifth District's application of *Jackson,* supra, was reasonable.  Finally, to the extent that Ground Six is predicated upon Petitioner's claim that his convictions are against the manifest weight of the evidence, such a claim is not cognizable on federal habeas review.  *Young v. Kemp*, 760 F.2d 1097, 1105 (11th Cir.1985); *Walker v. Timmerman–Cooper*, No. 1:05CV103, 2006 WL 3242101 (S.D.Ohio Oct.5, 2006). Accordingly, Ground Six has no merit.

### VII.   CONCLUSION

For the foregoing reasons, the undersigned RECOMMENDS that the Court DISMISS the instant petition in its entirety with prejudice.


DATE: July 30, 2012                              */s/ George J. Limbert*_____
                                                GEORGE J. LIMBERT
                                                UNITED STATES MAGISTRATE JUDGE


ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice. Fed. R. Civ. P. 72; L.R. 72.3. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. L.R. 72.3(b).